# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 17-737V
Filed: October 31, 2018
Not to be Published

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| RACHEL KNURA, as Personal Representative of the Estate of KOLE KNURA,          Petitioner, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br>         Respondent. | Attorneys' fees and costs decision; Reasonable attorneys' fees and costs |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>Daniel H. Pfeifer,</u> South Bend, IN, for petitioner.
<u>Voris E. Johnson,</u> Washington, DC, for respondent.

**MILLMAN, Special Master**

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On June 2, 2017, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), alleging that hepatitis A, measles-mumps-rubella ("MMR"), Prevnar, and Varicella vaccines her son received on June 10, 2014 caused him acute disseminated encephalomyelitis ("ADEM"), epileptic encephalopathy, and metabolic or genetic-mediated epilepsy.  Pet. at Preamble, ¶¶ 7, 20, and 21.

---

[1] Because this unpublished ruling on entitlement contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished ruling on entitlement on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. §3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the Internet.** Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a ruling on entitlement is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

On July 30, 2018, petitioner's counsel filed a motion to withdraw.   On October 5, 2018, petitioner filed a motion for interim attorneys' fees and costs.   On October 15, 2018, the undersigned dismissed the case.   Petitioner's motion for interim attorneys' fees and costs is considered as a motion for final attorneys' fees and costs.

For the reasons set forth below, the undersigned **GRANTS** petitioner's motion for attorneys' fees and costs.   Accordingly, the undersigned awards petitioner a total of $17,398.14, comprised of $11,027.50 for attorneys' fees and $6,370.64 for attorneys' costs.

## PROCEDURAL HISTORY

Petitioner filed her petition and medical records on June 2, 2017. The case was assigned to the undersigned on June 5, 2017.

In her Order of August 15, 2017, the undersigned raised her concern about whether, in light of the medical records and opinions of the treating doctors, the vaccines, metabolic abnormality, genetic mutation or some combination thereof caused petitioner's son's ADEM, if he had ADEM.   Doc 11.

On August 31, 2017, the initial status conference was held where the undersigned and the parties discussed the issues described in the undersigned's Order of August 15, 2017.   During this status conference, petitioner assured the undersigned that petitioner's son will undergo exome testing and that when testing is completed, an expert opinion will be obtained from Dr. Christopher T. Jackman, a neurologist.   Doc 12.   In addition, petitioner said that if an expert opinion cannot be obtained, petitioner will move to withdraw.   Id.   The undersigned ordered petitioner to file a status report explaining how she would like to proceed with the case by December 21, 2017.

On December 19, 2017, petitioner filed a status report and informal request for an extension of time.   In the status report, petitioner stated that the exome testing results for petitioner's son were normal.   However, the exome testing for the parents had not been completed.   Therefore, petitioner requested an extension of time in order to obtain records and to have the records reviewed by Dr. Jackman.

On December 20, 2017, the undersigned granted petitioner's informal request for an extension of time.   The undersigned ordered petitioner, by May 30, 2018, to file one of the following: (1) another status report concerning the progress of the case; (2) a report from Dr. Jackman, his CV, and any medical literature cited in the report; or (3) a motion to dismiss.

Petitioner filed additional medical records on January 31, 2018.   After reviewing the additional medical records, the undersigned noted that a certified genetics counselor, Melissa A. Gibbons, met with petitioner, her husband, and her son to discuss using GeneDX lab for Whole Exome Sequencing as the next step in their genetic workup.

The undersigned issued an order on February 9, 2018, ordering petitioner to obtain and subsequently file the Whole Exome Sequencing results from GeneDX by February 23, 2018. The undersigned again referred petitioner to the issues with the case the undersigned set out in the Order of August 15, 2017 that were also discussed in the initial status conference.   On February 23, 2018, petitioner filed the GeneDX records.

Petitioner filed a status report on May 30, 2018 notifying the undersigned that petitioner's son, the vaccinee, passed away on May 24, 2018.   Petitioner admitted that after review of all medical records, Dr. Jackman could not provide an expert opinion in support of vaccine causation.   Petitioner asked for time to look for substitute counsel and in the event that petitioner decided not to find substitute counsel, petitioner's current counsel would file a motion to dismiss the case.

On May 30, 2018, the undersigned issued an Order *sua sponte* for the Clerk of Court to change the case caption.   The undersigned also ordered petitioner, by July 30, 2018, to file: (1) the vaccinee's death certificate; (2) the autopsy report, if any; (3) the most recent medical records; and (4) a motion to substitute counsel or a motion to dismiss.

On July 30, 3018, petitioner's counsel filed a motion to withdraw as attorney. Petitioner's counsel explained that his office communicated with petitioner on July 27, 2018 and again tried to contact her on July 30, 2018 regarding whether she wanted to seek new representation or to dismiss the case.   As of July 30, 2018, counsel had not received a response from petitioner.   Thus, petitioner's counsel sought to withdraw as counsel for petitioner.

On October 5, 2018, petitioner filed a motion for interim attorneys' fees and costs. Petitioner requests $11,783.50 in attorneys' fees and $6,370.64 in attorneys' costs, for a total request of $18,154.14.   In her application, petitioner did not request any personal costs.

On October 15, 2018, respondent filed an opposition to petitioner's motion for interim attorneys' fees and costs arguing petitioner failed to establish a reasonable basis for her claim. Doc 27, at 1.   Respondent stated that the question of reasonable basis is an objective inquiry unrelated to counsel's conduct.   Id. at 4 (citing Simmons v. Sec'y of HHS, 875 F. 3d 632 (Fed. Cir. 2017)).   Moreover, respondent stated that in order to have a reasonable basis, a claim must, at a minimum, be supported by medical records or medical opinion.   Id. at 3 (citing Everett v. Sec'y of HHS, No. 91-1115V, 1992 WL 35863, at *2 (Cl. Ct. Spec. Mstr. Feb. 7, 1992)). Respondent argued that, when assessing the feasibility of the claim, petitioner lacked and never possessed a reasonable basis because petitioner did not offer preponderant evidence that Kole, petitioner's son and vaccinee, actually suffered from ADEM or that his injuries were caused by vaccinations, supported by a reliable medical theory, a logical sequence of cause and effect, or a medically-appropriate temporal relationship.   Id. at 4.   Respondent respectfully requested the undersigned deny petitioner's motion for an award of fees and costs.   Id. at 5.

On October 15, 2018, the undersigned dismissed petitioner's case.   Doc 28.   Thus, petitioner's motion for interim attorneys' fees and costs is now considered as a motion for final

attorneys' fees and costs.

On October 29, 2018, petitioner filed a reply to respondent's opposition arguing that petitioner had a reasonable basis for filing.   Doc 29.   Petitioner stated that the reasonable basis standard is the feasibility of the claim, based on the totality of the circumstances, not the likelihood of success.   Id. at 8 (citing Hiland v. Sec'y of HHS, No. 10-491V, 2012 WL 542683, at *6 (Fed. Cl. Jan. 31, 2012)).   Petitioner argued that the medical records establish feasibility because petitioner filed proof of Kole's vaccinations and medical records from various doctors indicating that Kole had a working diagnosis of ADEM and encephalopathy.   Id. at 9.   Petitioner argued that, but for the timing of onset, the medical records indicated a Table case here, and even with a two-month onset, Kole's claim was feasible where entitlement had been previously awarded for a petitioner who suffered ADEM two months after flu vaccination.   Id. at 10 (citing Brown v. Sec'y of HHS, 2011 WL 5029865, at *44-45 (Fed. Cl. Sept. 30, 2011)).   Moreover, petitioner argued that Kole was undergoing treatment when the petition was filed and Dr. Jackman could not complete a thorough review until genetic testing was completed.   Id. at 10-11.   Petitioner argued that reasonable basis requires neither an expert report nor definitive diagnosis because the "burden to showing a reasonable basis for fees is different from the burden to prove a prima facie off-[T]able case."   Id. at 12 (citing Thomas v. Sec'y of HHS, 2013 WL 5718948 (Fed. Cl. Sept. 26, 2013)).   Additionally, when Dr. Jackman determined that he could not support vaccine causation, petitioner did not prolong litigation and in fact counsel moved to withdraw.   Id. at 10-12.   Lastly, petitioner argued that public policy favors a lenient approach to reasonable basis and, therefore, supports an award of attorneys' fees and costs in this case.   Id. at 15 (citing Austin v. Sec'y of HHS, 2013 WL 659574, at *8 (Fed. Cl. Jan. 31, 2013)).

This matter is now ripe for adjudication.

## DISCUSSION

## I.   Entitlement to Fees Under the Vaccine Act

### a.   Legal Standard

Under the Vaccine Act, a special master or a judge on the U.S. Court of Federal Claims may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."   42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard.   Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).   A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred.   Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).   Petitioners are "entitled to a presumption of good faith."   Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Rules.   Deciding whether a

4

claim was brought in good faith and had a reasonable basis "is within the discretion of the Special Master." Simmons v. Sec'y of HHS, 128 Fed. Cl. 579, 582 (2016), aff'd, 875 F. 3d 632 (Fed. Cir. 2017) (quoting Scanlon v. Sec'y of HHS, 116 Fed. Cl. 629, 633 (2014) (citing Davis v. Sec'y of HHS, 105 Fed. Cl. 627, 633 (2012)). In determining reasonable basis, the Federal Circuit has clarified in Simmons that it is "an objective inquiry unrelated to counsel's conduct." Simmons, 875 F. 3d at 636. In determining reasonable basis, the court looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim." Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of HHS, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). Factors to be considered include factual basis, medical support, jurisdictional issues, and the circumstances under which a petition is filed. Turner, 2007 WL 4410030, at *6–*9.

Traditionally, special masters have been "quite generous" in finding reasonable basis. Turpin v. Sec'y of HHS, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); see also Austin v. Sec'y of HHS, 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("The policy behind the Vaccine Act's extraordinarily generous provisions authorizing attorney fees and costs in unsuccessful cases—ensuring that litigants have ready access to competent representation—militates in favor of a lenient approach to reasonable basis."). Special masters have found reasonable basis to file a claim absent medical records or opinions supporting vaccine causation. See Austin, 2013 WL 659574, at *8; Hamrick, 2007 WL 4793152.

### b. Good faith and reasonable basis

Petitioner is entitled to a presumption of good faith, and respondent does not contest that the petition was filed in good faith. Grice, 36 Fed. Cl. at 121. There is no evidence that this petition was brought in bad faith. Therefore, the undersigned finds that the good faith requirement is satisfied.

Simmons holds that the reasonable basis analysis must focus on whether there is evidentiary support for the claim set forth in the petition. Simmons, 875 F. 3d at 636. Simmons holds that reasonableness is an objective inquiry, not a subjective inquiry. Id. at 636. In keeping with the Vaccine Act and the Federal Circuit's decision in Simmons, the undersigned applies the reasonable basis standard by focusing on the objective evidence only. Petitioner filed her petition along with vaccination records and medical records that, although not conclusive, supported a diagnosis of ADEM and encephalopathy, while awaiting exome genetic testing. Med. recs. Ex 7, at 15-16, 21, and 317; Med. recs. Ex. 8, at 6; Med. recs. Ex. 10, at 6. Despite the two-month onset, petitioner had a reasonable expectation to prevail on a causation-in-fact basis in this case based on the supporting vaccination and medical records. See Brown, 2011 WL 5029865, at *43-44 (finding a two-month interval between vaccination and onset of ADEM as satisfying the appropriate temporal interval requirement for causation). The undersigned finds respondent's argument that petitioner lacked a reasonable basis unpersuasive and, therefore, finds that the reasonable basis requirement is satisfied.

## II.   Reasonableness of Requested Attorneys' Fees and Costs

5

**A.  Reasonable Attorneys' Fees**

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." 42 U.S.C. § 300aa-15(e)(1).   Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task.   See Savin v. Sec'y of HHS, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008).   Counsel must not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."   Saxton v. Sec'y of HHS, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).   It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done."   Id.   Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond.   See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009).

**1.  Reasonable Hourly Rates**

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."   Avera v. Sec'y of HHS, 515 F.3d 1343, 1352 (Fed. Cir. 2008).   In Avera, the Federal Circuit found that in Vaccine Act cases, a court should use the forum rate, i.e., the DC rate, in determining an award of attorneys' fees.   515 F.3d 1343 at 1349.   At the same time, the court adopted the Davis County exception to prevent windfalls to attorneys who work in less expensive legal markets. Id. (citing Davis County Solid Waste Mgmt. & Energy Recovery Spec. Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755 (D.C. Cir. 1999)).

Petitioner requests the following hourly rates:

|  | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|
| Daniel H. Pfeifer | N/A | $400 | $400 | N/A |
| Jerome W. McKeever | $250 | $250 | $250 | $250 |
| Julia I. Ramirez (Paralegal) | $140 | $140 | $140 | N/A |
| Kari A. Waterson (Paralegal) | N/A | N/A | $135 | N/A |
| Genna C.S. Leiter (Paralegal) | N/A | N/A | $130 | $130 |

The undersigned finds that the hourly rates requested by petitioner are reasonable.

**2.  Reduction of Billable Hours**

**a.  Excessive Billing**

Special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing.   See Ericzon v. Sec'y of HHS, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); Raymo v. Sec'y of HHS, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), mot. for rev. denied, 129 Fed. Cl. 691 (2016).

Mr. Pfeifer billed four hours for Ms. Leiter to essentially draft and file exhibits, which included making copies of the CD-ROM exhibits.   Doc 26-1, at 13-14.   The undersigned finds it reasonable for Ms. Leiter to complete this billed task in two hours.   Similarly, Mr. Pfeifer billed two hours for Ms. Leiter to email and file records.   Id. at 14-15.   The undersigned finds it reasonable for this task to be completed in one hour.   The undersigned also finds Ms. Leiter's entry of drafting letters and burning files to disc for two hours to be excessive.   Id. at 15.   The undersigned finds that it is reasonable for such a task to be completed in half an hour. Therefore, the undersigned reduces the hours billed for Ms. Leiter by four hours.   These adjustments result in a **deduction of $520.00** from Ms. Leiter's work.

### b.  Duplicative Billing

The undersigned has previously found it reasonable to reduce the fees paid to petitioners due to duplicative billing and billing for intra-office communication.   Soto v. Sec'y of HHS, No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011); Carcamo v. Sec'y of HHS, No. 97-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011).   Special masters have previously noted the inefficiency that results when cases are staffed by multiple individuals and have reduced fees accordingly.   Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 209 (2009).

After reviewing the billing records, the undersigned finds that counsel included entries that are duplicative due to both attorneys and paralegals billing for review of the same emails, participating in the same conferences, and communicating with each other regarding the same matters.   Mr. Pfeifer and Ms. Waterson included duplicative entries for a status conference held on August 31, 2017.   Doc 26-1, at 2, 9.   The undersigned recognizes the time Mr. Pfeifer spent on the conference.   Mr. McKeever and Ms. Waterson included duplicative entries regarding conferences they had with each other on August 24, 2017 and August 30, 2017.   Id. at 3, 7, and 9.   Mr. McKeever and Ms. Leiter included duplicative entries regarding a call with Dr. Jackman on March 7, 2018.   Id. at 4, 15.   Mr. McKeever and Ms. Leiter included duplicative entries for reviewing an email from Dr. Jackman on May 3, 2018.   Id. at 4, 16.   Mr. McKeever and Ms. Leiter included duplicative entries for a conference they had to discuss how to proceed with the case on May 22, 2018.   Id. at 4, 16.   Mr. McKeever and Ms. Leiter included duplicative entries for a telephone conference with their client on May 30, 2018.   Id. at 5, 17.   The undersigned recognizes the time Mr. McKeever spent on these duplicative entries only.   These adjustments result in a **deduction of $108.00** for Ms. Waterson's work and in a **further deduction of $182.00** for Ms. Leiter's work.

Therefore, the total amount of attorneys' fees billed by Ms. Waterson is reduced by $108.00 and $1,822.50[2] is awarded.   The amount of attorneys' fees billed by Ms. Leiter is reduced by $702.00 and $1,833.00 is awarded.   Thus, the total amount paid for attorneys' fees incurred is $11,027.50.

### B.  Reasonable Attorneys' Costs

Attorneys' costs must be reasonable as well.   See Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both.   Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs.").   The undersigned finds the attorneys' costs reasonable.

## CONCLUSION

The undersigned finds an award of attorneys' fees and costs appropriate. She also finds that the majority of the amount petitioner asks for in her application for fees and expenses is reasonable.   **Accordingly, the court awards $17,398.14**, representing attorneys' fees and costs. The award shall be in the form of a check made payable jointly to petitioner and the law firm of Pfeifer Morgan & Stesiak in the amount of **$17,398.14**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED.**

Dated: October 31, 2018                                           /s/ Laura D. Millman
                                                                              Laura D. Millman
                                                                              Special Master

---

[2] For Ms. Waterson, the time for an entry dated August 29, 2017 was misplaced. Doc 29, at 8. Therefore, the total of time billed for Ms. Waterson was adjusted to include the missing time entry before deductions.

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.